**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SANTIAGO GOMEZ and MICHAEL GONZALEZ,**

                                    **Plaintiffs,**

      -v-                                                       **9:14-CV-01476**

**JEFFREY TEDFORD; DANIEL PERRYMAN;**
**JEFFREY COTTER; PAUL WOODRUFF;**
**and JOSEPH PAYTON,**

                                    **Defendants**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.     INTRODUCTION**

      Plaintiffs Santiago Gomez and Michael Gonzalez commenced this

civil rights action _pro se_ pursuant to 42 U.S.C. § 1983 and New York state law seeking

money damages for alleged violations of their First, Eighth, and Fourteenth Amendment

and state-law rights. Dkt. No. 1 at ¶ 1.  Plaintiffs allege that during their confinement at

Adirondack Correctional Facility ("Adirondack"), Defendants Tedford, Perryman, Cotter,

Woodruff, and Payton: (1) failed to protect Plaintiffs from exposure to friable asbestos in

violation of the Eighth Amendment; (2) retaliated against Plaintiff Gomez for filing

grievances and/or Freedom of Information Law ("FOIL") requests in violation of the First

Amendment; (3) deprived Plaintiffs of due process or equal protection in violation of the

Fourteenth Amendment; and (4) committed pendent state law torts of negligent infliction of

emotional distress and gross negligence. *Id.* at ¶¶ 82-95.

Defendants move to dismiss the Complaint in its entirety under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Dkt. # 35. Plaintiff Gomez opposes the motion. Dkt. # 37.[1] The Court decides the motion without oral argument. For the reasons that follow, the motion is granted in part and denied in part.

## II.    BACKGROUND

Plaintiffs Santiago Gomez and Michael Gonzalez are inmates formerly confined at Adirondack Correctional Facility ("Adirondack"). Dkt. No. 1 at ¶ 15.[2] On March 18, 2014, Plaintiffs arrived at Adirondack and were placed in the 1-East reception housing area. Dkt. No. 1 at ¶ 15. Two weeks later, Gomez was transferred to the "C-2" housing unit at Adirondack, while Gonzalez was sent to the "3-M" housing unit. *Id.* In April 2014, Gonzalez was also sent to the "C-2" housing unit. *Id.*

Plaintiffs allege that in April 2014 they were "directed to clean their living quarters" in the "C-2" housing unit daily, including using "a high speed buffer in their room floors and wing hallways." *Id.* at ¶ 16. Plaintiffs also allege that the vinyl flooring in the "west wing" portion of the "C-2" housing unit, where they were housed, was "severely cracked, damaged, chipped, and broken." *Id.* at ¶ 17. Plaintiffs believe that the vinyl flooring in the

---

[1] The motion, made on July 27, 2015, was noticed for a September 3, 2015 return date before the Hon. Randolph F. Treece, United States Magistrate Judge previously assigned to this case. Pursuant to the Local Rules, Plaintiffs' responses to the motion were due by August 17, 2015. *See* N.D.N.Y. L. R. 7.1(b)(1). As indicated in the text, Plaintiff Gomez filed opposition but Plaintiff Gonzalez did not. The Court will consider the motion as to Gonzalez as unopposed. N.D.N.Y. L. R. 7.1(b)(3).

[2] Defendants report that Plaintiff Gomez remains in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), and is currently confined at Franklin Correctional Facility. Plaintiff Gonzalez was released from DOCCS custody in December 2014. *See* http://nysdoccslookup.doccs.ny.gov. Neither Plaintiff has challenged this representation, and Gonzalez has notified the Court that he is currently residing in Florida. *See* dkt. # 5.

hallways and "side rooms" of the "west wing" contained asbestos. *Id.* at ¶ 18.  Plaintiffs allege that they inhaled "dust particles which contained asbestos" while using high speed buffers on the flooring in the "west wing." *Id.* at ¶ 21.  Plaintiffs claim that Defendants were aware that the flooring in C-2's west wing contained asbestos, and that Defendants "failed to implement a policy and procedure or advise of dangers" of asbestos. *Id.* at ¶ 19.

On April 27, 2014, Gomez was transferred to the 2-West housing unit. *Id.* at ¶ 22.  Gomez alleges that upon arriving in 2-West he observed a "large cavity," "stress cracks," and "holes" in the ceiling, broken floor tiles, chipped paint, and mold in the showers. *Id.* at ¶ 22.  Gomez alleges that dust containing asbestos was "airborne in the entire 2-West housing unit daily." *Id.* at ¶ 24.  He alleges that maintenance staff at Adirondack failed to properly seal a hole in the ceiling from which dust particles, which he believes contained asbestos, became airborne. *Id.* at ¶ 25.

On May 22, 2014, Gomez was transferred out of the 2-West housing unit. *Id.* at ¶ 27.  Gomez alleges that he returned to 2-West on or about June 25, 2014 while working as an inmate porter and used a high speed floor buffer in hallways and rooms in 2-West. *Id.*  He asserts that the high speed buffer caused asbestos particles from the flooring to become airborne. *Id.* at ¶ 29.  He contends that Defendants were aware that the 2-West flooring contained asbestos but failed to "advise supervisory [c]orrectional staff of the dangers associated with using high speed buffers" on the 2-West flooring. *Id.* at ¶ 30.

On July 31, 2014, the 2-West housing unit was closed for "asbestos-related work," including work on the ceiling. *Id.* at ¶ 35.  Plaintiffs claim that "only one sign was placed on the back door" of 2-West advising of the ongoing work. *Id.* at ¶ 36.  Gomez also alleges

that he observed civilian and inmate workers "perform numerous jobs that required drilling into the walls" in the 3-West housing unit, which caused "dust to become airborne and inhaled by plaintiff." *Id.* at ¶ 37. Gomez believes that this dust contained asbestos, and contends that there were "no asbestos job related warning signs" posted and that this area "was not sealed off to prevent exposure." *Id.*

Plaintiffs also allege that on or about August 17, 2014, Defendants Cotter, Perryman, Tedford, and Woodruff hired a private contractor to perform work on the exterior of 3-West, which caused "insulation to become airborne" and enter the interior of 3-West through an open window. *Id.* at ¶ 38. Plaintiffs believe that this insulation contained asbestos. *Id.* at ¶ 39. Gomez alleges that at some unspecified time he experienced "shortness of breath, wheezing, and headaches," and that he was seen by a nurse at Adirondack, who denied his request for a lung x-ray. *Id.* at ¶ 40.

Gomez further alleges that the 2-West and C-2 housing units have chipped and peeling paint and caulking, which he believes contain lead, as well as mold inside the showers. *Id.* at ¶¶ 58, 69, 70, 74.

Gomez filed a grievance and Freedom of Information Law ("FOIL") requests seeking materials related to asbestos testing at Adirondack. *Id.* at ¶ 41. He then met with Defendant Perryman, who "appeared to be controlling what records could be released," and who misstated Gomez's FOIL requests or offered un-requested materials. *Id.* Gomez asserts that, "10-minutes after [he] was issued some of his Freedom of Information Law request documents," in retaliation for his FOIL request, Defendant Perryman caused him to be transferred from the 3-West housing to the 1-East housing unit where he was

assigned a top bunk "positioned over a sagging floor, which cause[d] the bed to rock tremendously." *Id.* at ¶¶ 44-45.   Gomez contends that Defendant Perryman was "aware that plaintiff suffers from back injuries" and receives physical therapy on this right ankle, and believes that Perryman and Defendant Woodruff  "ordered Plaintiff Gomez not to be issued a [c]hair, [l]adder, [or] [l]ittle locker" which would have assisted Gomez in climbing out of his top bunk.  *Id.* at ¶ 47.

On September 3, 2014, Gomez claims that he injured himself while getting out of bed, causing pain in his lower back and right ankle. *Id.*  Gomez also claims that "on loss of recreation status [he] was forced to stand all day as no chair was provided causing Plaintiff's kneecaps to feel throbbing pains, and sharp pains as to his right ankle." *Id.* Gomez was then seen by a facility physician on September 5, 2015, who provided Plaintiff with pain medication and a "bottom bunk only pass." *Id.*

Gomez also alleges that "defendants" caused him to "undergo 4-5 urinalysis" tests between August and September 2014 "despite never testing positive for drugs or otherwise having any drug-related infractions." *Id.* ¶ 46.

On September 24, 2014, Superintendent Tedford denied a September 7, 2014 grievance concerning Gomez's allegations that he was subject to harassment and retaliation by facility staff for his grievance and FOIL requests. Dkt. No. 1-5 at pp. 7-10.[3]

---

[3]Superintendent Tedford's response advises Plaintiff that: (1) Plaintiff was provided with responses to his FOIL requests on August 27, 2014, including materials in excess of ten years old and an explanation or what the documentation represented; (2) Deputy Superintendent of Administration ("DSA") Perryman first learned that Plaintiff was no longer housed in the 3-West housing unit when he reviewed Plaintiff's September 7, 2015 grievance; (3) Gomez was examined by medical staff on May 21, 2014 and June 5, 2014, and did not require a bottom bunk order at that time; (4) DSA Perryman does not make program recommendations, has never made a program recommendation for Plaintiff, and does not direct the Deputy Superintendent of Security ("DSS") concerning program recommendations; (5) DSA Perryman is unaware of
(continued...)

On September 8, 2014, Gomez alleges he began his new employment as an Adirondack Lawns and Grounds worker which exposed him to friable asbestos from the ceiling and floor of the 2-West housing unit while moving beds and lockers from 2-West into another building. *Id.* at ¶¶ 62-68, 75-80.

Although the instant action was brought jointly by Gomez and Gonzalez, the only specific allegation in the Complaint pertaining to Gonzalez is that in "March, April, [and] early May 2014," while working in the 1-W housing unit, Gonzalez was "directed to use high speed buffers on all flooring in the housing unit which caused dust to become airborne." *Id.* at ¶ 57.  Gonzalez alleges that he "inhaled dust as he buffed said floors daily," and that he believes this dust contained asbestos.  *Id.*

## III.    STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court must  accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted).[4]  This tenet does not apply to legal  conclusions, non-factual matter, or "conclusory statements" set forth in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 -79 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell*

---

[3](...continued)
any urinalysis testing done on Plaintiff; and (6) the DSS confirmed that Plaintiff received urinalysis testing due to suspicion. *Id.*

[4]In deciding a motion to dismiss, a court may also review documents "integral to the complaint," as well as any statements or documents incorporated into the complaint by reference. *See Faiz v. Colgate University*, 2014 U.S. Dist. LEXIS 164168, at *12 (N.D.N.Y. Nov. 24, 2014).

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  While Rule 8(a)(2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Id.* (citation and internal quotation marks omitted).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Id.* (citation omitted).  A plaintiff must show "more than a sheer possibility that a defendant acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).  Accordingly, *pro se* complaints should be read with "special solicitude" and should be interpreted to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (citations omitted).  The Court is not, however, required to give credence to a plaintiff's conclusory allegations.  *See Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)(citing *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996)).

7

## IV.    DISCUSSION

### a.  Prisoner Asbestos Eighth Amendment Claims

Plaintiffs allege in Count I and Count II that Defendants failed to protect them from exposure to friable asbestos.  Compl. ¶¶ 82-85.  "The Second Circuit has held that a prisoner who 'claims that he was exposed to friable asbestos while incarcerated . . . and [that] defendants knowingly failed to protect him from such exposure' states an Eighth Amendment claim." *Johnakin v. NYC Dep't of Corr.*, 2013 U.S. Dist. LEXIS 144059, at *47 (E.D.N.Y. Sept. 30, 2013) (citing *LaBounty v. Coughlin*, 137 F.3d 68, 72 (2d Cir. 1998)). "That claim arises not from the narrow right to be free from exposure to asbestos, but a broader right to be free from deliberate indifference to serious medical needs." *Id.* (internal quotations and citations omitted).

> Although *LaBounty* did not discuss the level of exposure necessary to state an Eighth Amendment claim, several district court opinions have held that not just any level of exposure to hazardous materials is sufficient to give rise to an Eighth Amendment claim. These courts have held that an inmate must be exposed to an "unreasonably high concentration of air-borne asbestos particles" in order to state a cognizable claim under the Eighth Amendment. *Simmons v. Gowanda Corr. Fac.*, No. 13-CV-0647Sc, 2013 U.S. Dist. LEXIS 92926, 2013 WL 3340646, at *2 (S.D.N.Y. July 1, 2013) (citing *Pack v. Artuz*, 348 F. Supp. 2d 63, 79-80 (S.D.N.Y. 2004) ("For exposure to airborne asbestos fibers to create a substantial risk of serious harm, however, the intensity and duration of the exposure must both be significant.")); *see also Wright v. New York State Dep't of Corr. Servs.*, No. 06 Civ. 3400 (RJS) (THK), 2008 U.S. Dist. LEXIS 106507, 2008 WL 5055660, at *10 (S.D.N.Y. Oct. 10, 2008) ("Exposure to unsafe levels of toxic substances, such as tobacco smoke or asbestos, may suffice as sufficiently dangerous conditions to satisfy the objective element of an Eighth Amendment claim.").

*Johnakin*,  2013 U.S. Dist. LEXIS, at *48.

Thus, to state a plausible Eighth Amendment claim, Plaintiffs must allege that they have been exposed to an unreasonably high concentration of air-borne asbestos particles.

*Id.* Further, because the Prison Litigation Reform Act ("PLRA") provides that "[n]o federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury, " 42 U.S.C. § 1997e(e), "several courts have concluded that a plaintiff who fails to allege physical injury arising from the asbestos exposure has not stated a claim for money damages relating to that exposure. *Id.,* at *48-49 (citing *Herman v. Holiday*, 238 F.3d 660, 665-66 (2d Cir. 2001); *Black v. Blackmun*, No. 11 Civ. 2372 (BMC) (ALC), 2008 U.S. Dist. LEXIS 106507, 2011 WL 6019394, at *5 (E.D.N.Y. Dec. 1, 2011) (holding that a plaintiff's claim relating to asbestos exposure failed to state a claim because the plaintiff did not allege that he "developed any diseases or conditions relating to that exposure.")); *see also Walker v. LaValley*, 2014 U.S. Dist. LEXIS 133675, at *47-48 (N.D.N.Y. July 8, 2014), report and recommendation adopted by 2014 U.S. Dist. LEXIS 132999 (N.D.N.Y. Sept. 23, 2014)(Granting summary judgment on a plaintiff's Eighth Amendment exposure to friable asbestos claim because, *inter alia*, although plaintiff experienced shortness of breath, he "did not provide any details of that condition and is uncertain whether it is related to the exposure. Furthermore, Walker admittedly never sought medical treatment for asbestos exposure.").

### 2.  Analysis of Plaintiffs' Claims

Here, Gomez and Gonzalez seek to recover monetary damages for their alleged exposure to friable asbestos on the grounds that they "now live in fear of contracting asbestos related cancers," have suffered "severe emotional trauma/emotional distress," and anticipate "future psychological expenses." Compl., ¶¶ 61, 81.  The fact that they live in fear of contracting an asbestos-related disease is, by itself, insufficient.

9

The Complaint is devoid of any factual allegation that either Plaintiff has developed an asbestos related physical injury or condition.  Indeed, the Complaint lacks any allegation that Gonzalez suffered any physical effects from his alleged exposure to asbestos.  Similarly, Gomez's allegation that at some unspecified time he experienced shortness of breath, wheezing, or headaches does not support an inference that he has developed a sufficiently serious asbestos-related injury within the meaning of Eighth Amendment jurisprudence. *See Walker*, 2014 U.S. Dist. LEXIS 133675, at *48 (plaintiff's unadorned allegation that he experienced shortness of breath insufficient to establish a physical injury for purposes of an Eighth Amendment asbestos exposure claim); *Black*, 2011 U.S. Dist. LEXIS 137881, at *14 (dismissing Eighth Amendment asbestos exposure claim where plaintiff did "not allege that he has developed any diseases or conditions relating to that exposure.").  While Gomez argues that he was denied a chest x-ray while at Adirondack that *might* have shown the early stages of an asbestos-related disease, he has not alleged that he actually suffers from such a condition.  His speculation that he might have a serious condition is insufficient to sustain the Eighth Amendment claim he asserts.[5]  Because Plaintiffs may not recover damages for their alleged emotional trauma without a showing of physical injury, *see Johnakin*, 2013 U.S. Dist. LEXIS, at *48-49, their conclusory allegations of asbestos exposure fail to state a plausible Eighth Amendment claim.

---

[5] Importantly, Plaintiffs do not present facts plausibly suggesting that any of the Defendants were deliberately indifferent to, or intentionally denied, delayed access to, or interfered with obviously necessary medical treatment or tests. *See* Compl. ¶ 40 ("Plaintiff Gomez started to suffer from shortness of breath, wheezing, and headaches and specifically requested medical attention, through sick call seeking an examination of his lungs x-rays but was denied by Nurse Juh . . . ."). Nurse Juh is not a defendant in this action.

However, *pro se* plaintiffs are normally afforded an opportunity to amend where a liberal reading of the complaint gives an indication that a valid claim might be stated. *See Carolina v. Rubino*, 2016 WL 1168695, at *3 (2d Cir. Mar. 25, 2016); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir.1999). The Court notes that the Complaint was drafted in December 2014. "Since symptoms of asbestos-related illness may not become manifest until years after exposure, this Court cannot assume from [Plaintiffs'] failure to allege any ill-effects in [their] complaint that [they] would be unable to do so now." *Johnakin*, 2013 U.S. Dist. LEXIS, at *50(citing *In re Quigley Co., Inc.*, 676 F.3d 45, 58 (2d Cir. 2012)). Accordingly, "in an abundance of caution, this Court will grant [Plaintiffs] leave to re-plead [their] deliberate indifference [claims] relating to [their] alleged asbestos exposure.*" Id.* (citing *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2005) (holding, in a case in which claims against DOC's Commissioner, Deputy Commissioner, and other supervisors were dismissed for lack of personal involvement, that a DOC inmate should have been permitted to re-plead claims against these defendant because the Court could not "rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim").[6]

Nevertheless, any attempt by Plaintiffs to re-plead a claim for injunctive relief would be futile because: (1) Gomez is no longer housed at Adirondack Correctional Facility; and (2) Gonzalez was released from DOCCS custody in December 2014. "It is settled in this

---

[6] Because Defendants have not raise the issue of personal involvement, the Court offers no opinion as to whether the Complaint assert facts plausibly indicating that any of the Defendants knew of and disregarded either Plaintiffs' serious medical need. *See Chance v. Armstrong*, 143 F.3d. 698, 702 (2d Cir. 1998)(To state an Eighth Amendment deliberate medical indifference claim, an inmate must establish two elements. First, the inmate must show that he had a sufficiently serious medical need. Second, the inmate must show that the state actor demonstrated deliberate indifference by having knowledge of the risk and then failing to take measures to avoid the harm.)

Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996). Accordingly, Plaintiffs' Eighth Amendment claims are dismissed with leave to re-plead that portion of their claims seeking monetary recovery, but not for injunctive relief.

### b. Fourteenth Amendment Due Process and/or Equal Protection Claims

It is unclear whether Plaintiffs are attempting to allege Fourteenth Amendment Due Process or Equal Protection claims. *See* Compl. p. 15 ("Count III") and ¶¶ 86-88.[7] The Court will analyze the claims under both provisions.

### 1. Due Process Clause

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV §1. Due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of the law." *Baker v. McCollan*, 443 U.S. 137, 145 (1979) (internal quotation & citations omitted). "A liberty interest may arise from the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).

### a. Procedural Due Process

To establish a procedural due process violation in a §1983 action, Plaintiffs must show that they had protected liberty interests which were deprived without due process of

---

[7]"Count III" is captioned as: "§1983 Claims of Due Process," Compl. p. 15, but alleges only: "Defendants hereby denied Plaintiff(s) equal protection of the Laws of the United States of America and the State of New York." *Id.* ¶ 87.

law. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001. If Plaintiffs have not established

deprivation of protected liberty interests, their claims must be dismissed. *Frazier v.*

*Coughlin*, 81 F.3d 313, 317-18 (2d Cir. 1996).

     A prisoner's protected liberty interest is implicated where the punishment at issue

imposes an "atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "In order to

determine whether a liberty interest has been affected, district courts are required to

examine the circumstances of a confinement and to identify with specificity the facts upon

which [their] conclusions [are] based." *Wright v. Coughlin*, 132 F. 3d 133, 137 (2d Cir.

1998) (citations omitted). The Constitution "does not protect [inmates from] every change

in the conditions of confinement having a substantial adverse impact on the

prisoner" if those changes are "within the normal limits or range of custody which the

conviction has authorized the State to impose." *Sandin*, 515 U.S. at 478 (internal

quotations and citations omitted).

### b. Substantive Due Process

     "To establish a violation of substantive due process rights, a plaintiff must

demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be

said to shock the contemporary conscience.'" *Okin v. Vill. of Cornwall–on–Hudson Police*

*Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S.

833, 847 n. 8, 118 S. Ct. 1708, 140 L. Ed.2d 1043 (1998)).

### 2. Equal Protection Clause

     "To prove a violation of the Equal Protection Clause [of the Fourteenth Amendment]

. . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).   Plaintiffs must show "that [they were] intentionally treated differently from other similarly-situated individuals without any rational basis." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 158-59 (2d Cir. 2006).   In the prison context, an inmate must also show that any "disparity in treatment . . . was not reasonably related to any legitimate penological interests." *Id.*

### 3. Analysis of Plaintiffs' Claims

The Complaint lacks any allegation plausibly suggesting that either Plaintiff possessed a cognizable liberty interest, or that Defendants deprived Plaintiffs of such without due process.  Plaintiffs rely upon the unadorned legal conclusion that defendants denied them "equal protection of the Laws of the United States of America and the State of New York" without providing any factual allegations plausibly supporting a due process violation. Dkt. No. 1 at ¶¶ 86-87.  The Complaint contains no factual allegation plausibly suggesting that either Gomez or Gonzalez was subject to any disciplinary proceeding placing a liberty interest at stake, much less that either Plaintiff was deprived of a liberty interest without due process.  Further, the Complaint lacks any factual allegations plausibly suggesting that Plaintiffs were subjected to conduct or conditions "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cty. of Sacramento*, 523 U.S. at 847 n. 8.

Moreover, the Complaint contains no allegations of intentional or purposeful discrimination by any defendant against either Plaintiff to plausibly suggest an equal

protection claim.  Indeed, there are no allegations of any disparity in treatment lacking a rational basis in legitimate penological interests.

Plaintiffs' vague and conclusory assertions are insufficient as a matter of law to state a due process or equal protection claim.  Accordingly, the due process and equal protection claims are dismissed.  Plaintiffs are granted leave to re-plead these claims.

### c.  First Amendment Retaliation Claim

The Complaint alleges a claim by Gomez for First Amendment retaliation.  Comp., p. 16 ("Count V") and ¶ 93.[8]

### 1.  First Amendment Retaliation Standard

To succeed on a First Amendment retaliation claim, an inmate must demonstrate: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).   "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."  *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), overruled on other grounds, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002).

Plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and was a substantial motivating factor in the action. *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002).  The burden then shifts to the defendant to show that the same

---

[8]Count V, stated as  "§1983 Claims of Retaliation," alleges that "Defendant's actions were purely retaliatory and men to harass Plaintiff Gomez for the fact that Gomez was petitioning the government for redress, further Defendants caused severe hardship upon Plaintiff." Compl. p. 16 and ¶ 93. There are similar allegations for Gonzalez.

action would have been taken absent a retaliatory motivation. *Id.*

There are several factors that may be considered in determining whether a causal connection exists between a plaintiff's protected activity and a prison official's actions, including the temporal proximity between the protected activity and the alleged retaliatory act. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

Even if a plaintiff can make this showing, a claim may still fail if the defendant can show by a preponderance of the evidence that he would have taken the same action "'even in the absence of the protected conduct.'" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Mount Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287(1977)). "Thus, if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone." *Id.* (citing *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994)).

The Second Circuit has instructed courts to approach retaliation claims by inmates with skepticism, because such claims are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Dawes*, 239 F.3d at 491, overruled on other grounds, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002); *see also Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). "A finding of sufficient permissible reasons to justify state action is readily drawn in the context of prison administration . . . ." *Graham*, 89 F.3d at 79. Courts recognize the broad administrative

authority of prison officials because any adverse action that a prison official takes, even one that does not rise to the level of a constitutional violation, can be characterized as a retaliatory act. *See Miller v. Loughren*, 258 F. Supp. 2d 61, 62 (N.D.N.Y. 2003); *Lipton*, 315 F. Supp. 2d at 448.

### 2. Analysis of Plaintiff Gomez's Claim

Here, Gomez alleges that, in retaliation for his grievance and FOIL requests, Defendant Perryman: (1) caused Gomez to be moved from a four-man room with single bunks to a top bunk in the 1-East housing area where the bunk beds were over a "sagging floor" causing the beds to rock "tremendously" when climbing in and out from the top position, which Perryman knew would be difficult for Gomez because Gomez was receiving physical therapy for a right ankle fracture; (2) changed Gomez's program assignment to a lawns & grounds detail which required Gomez to move lockers and beds in an area where Gomez believed there was friable asbestos dust particles; (3) caused Gomez to undergo repeated urinalysis testing; and (4) caused Gomez to be denied a chair, ladder, or locker to assist him in climbing out of his top bunk bed, and which required him to remain standing all day so that he could comply with facility rules prohibiting inmates to lie in bed until after 5 PM. Dkt. No 1 at ¶¶ 41-47. Plaintiff also asserts that Defendant Woodruff was involved with the order not to issue Gomez a chair, locker, or ladder. *Id.*

Gomez pleads facts plausibly supporting a causal connection between his grievances or FOIL requests and conduct by Defendants Perryman and Woodruff. While Defendants point out that an exhibit to the Complaint indicates that Superintendent

Tedford denied Gomez's grievance concerning his retaliation claims because he found no misconduct on the part of Adirondack staff, *see* fn. 3, *supra,* the Court must assume the truth of the allegations made by Gomez for purposes of deciding the instant motion. When doing so, Gomez presents plausible claims against Perryman and Woodruff that, in close temporal proximity to Gomez's protected activity, the two took adverse action against Gomez. Even when viewing the retaliation claim with the skepticism accorded such claims, *Dawes*, 239 F.3d at 491, Gomez has asserted plausible First Amendment retaliation claims against Perryman and Woodruff.

Accordingly, Defendants' motion to dismiss the First Amendment retaliation claims is denied with regard to Gomez's claims against Perryman and Woodruff, and granted as to the other Defendants. Gomez is granted leave to re-plead retaliation claims against the other Defendants.

### d.  State Law Claims

Defendants argue that the Court lacks subject matter jurisdiction over Plaintiffs' state law claims. The Court agrees.

### a.  Pendent Jurisdiction over State Law Claims

A federal court exercising pendent jurisdiction applies the law of the forum state. *United Mine Workers v. Gibbs*, 383 U.S. 715, 736 (1996). "[I]f state law does not recognize a plaintiff's right to bring an action in state court, a federal court, exercising pendent jurisdiction, sitting as a state court, must follow the state law limitation on jurisdiction." *Livingston v. Griffin*, 2007 U.S. Dist. LEXIS 61642, at *4 (N.D.N.Y. Aug. 22, 2007) (citing *Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996).

18

New York Corrections Law § 24 precludes state law damage claims against DOCCS officials in their personal capacities in any court arising out of conduct within the scope of their employment, and requires that "[a]ny claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the Court of Claims as a claim against the state." N.Y. Corr. L. § 24(1), (2). Furthermore, "because the Court of Claims is a court of limited jurisdiction, hearing only claims against New York State and no other individual or entity, [Section 24] amounts to a grant of immunity for [DOCCS officials] sued in their personal capacities for [state law] claims arising out of the discharge of their duties." *Rucano v. Koenigsmann*, 2014 U.S. Dist. LEXIS 44085, at *39 (N.D.N.Y. Mar. 3, 2014) report and recommendation adopted by 2014 U.S. Dist. LEXIS 44637 (N.D.N.Y. Mar. 31, 2014); *see Rounds v. Thompson*, 2013 U.S. Dist. LEXIS 86480, at *11 (N.D.N.Y. May 28, 2013) report and recommendation adopted by 2013 U.S. Dist. LEXIS 86478 (N.D.N.Y. June 20, 2013).

### b. Analysis of Plaintiffs' Pendent State Law Claims

Plaintiffs state law claims arise out of the conduct of DOCCS officials taken within the scope of their employment. *See generally,* Compl.; *see also Johnson v. N.Y. State Dep't of Corr. Servs. & Cmty. Supervision*, 2013 U.S. Dist. LEXIS 136520, at *6-8 (N.D.N.Y. Sept. 23, 2013); *Cepeda v. Coughlin*, 513 N.Y.S.2d 528, 530 (N.Y. 1987)("[A]n employee will be considered within the scope of employment so long as he is discharging his duties, no matter how irregularly, or with what disregard of instructions." )(internal quotations omitted).  Further, Plaintiffs seek money damages against Defendants for

19

these pendent state law claims. *See* Compl., at ¶¶ 89-91.

Because Plaintiffs' allegations arise out of conduct within the scope of Defendants' employment as DOCCS officials at Adirondack Correctional Facility, the Court lacks subject matter jurisdiction over Plaintiffs' pendent state law claims.  N.Y. Corr. L. § 24. Accordingly, Plaintiffs' pendent state law claims are dismissed.  Leave to re-plead these claims is denied.

## V.    CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss Plaintiffs' Complaint [dkt. # 35] is **GRANTED in part and DENIED** in part, as follows:

(1) Plaintiffs' Eighth Amendment claims are dismissed with leave to re-plead that portion of the claims seeking monetary recovery.  Plaintiffs' claims for injunctive relief are dismissed without leave to re-plead;

(2) Plaintiffs' Fourteenth Amendment due process and equal protection claims are dismissed with leave to re-plead;

(3) Plaintiffs' First Amendment retaliation claims against all Defendants, except Gomez's claims against Perryman and Woodruff, are dismissed with leave to re-plead; and

(4) Plaintiffs' New York state-law claims are dismissed without leave to re-plead.

Plaintiffs are granted leave of thirty (30) days to file an amended complaint  setting forth certain claims as addressed more particularly above.  Plaintiffs are advised that <u>an amended complaint **supersedes in all respects** the prior pleading.  Therefore, if Plaintiffs file an amended complaint they **must properly allege the claims for which leave to re-**</u>

**plead has been granted and must properly re-allege the claims that have not been dismissed** by this Decision and Order.  The failure to file an amended complaint within this time frame will be deemed as an abandonment of any claims for which leave to re-plead has been granted and will result in judgment being entered against Plaintiffs on these claims without further order by the Court.

**IT IS SO ORDERED**

**Dated:** March 31, 2016

Thomas J. McAvoy
Senior, U.S. District Judge

21