**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SANTIAGO GOMEZ,

                       Plaintiff,

    - v -                                             Civ. No. 9:14-CV-1476
                                                     (TJM/DJS)

D. PERRYMAN and PAUL WOODRUFF,

                       Defendants.

**APPEARANCES:**                        **OF COUNSEL:**

SANTIAGO GOMEZ
Plaintiff, *Pro Se*
173518
Westchester County Jail
P.O. Box 10
Valhalla, New York 10595

HON. ERIC T. SCHNEIDERMAN        RYAN W. HICKEY, ESQ.
Attorney General of the State of New York  Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

     Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 while an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The Complaint asserted a number of claims against multiple Defendants. In a Decision and Order dated March 31, 2016, the District Court dismissed all claims other

than Plaintiff's First Amendment retaliation claims against Defendants Perryman and Woodruff. Dkt. No. 39. Following the close of discovery, Defendants have filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 69. Defendants have separately filed medical records related to Plaintiff's confinement in DOCCS custody. Dkt. No. 70, Pl.'s Med. Records. Plaintiff opposes the Motion. Dkt. No. 79. Based upon the following analysis, the Court recommends that the Defendants' Motion for Summary Judgment be **granted** and Plaintiff's action be **dismissed**.

## I. FACTUAL BACKGROUND

While housed at Adirondack Correctional Facility ("Adirondack"), Plaintiff became concerned about the potential presence of asbestos in his housing unit. *See generally* Dkt. No. 40, Am. Compl. He claims he lived in a housing unit where asbestos was present and that, as part of his work assignment, was required to perform cleaning which disturbed exposed asbestos materials. *Id*. In an effort to obtain information about the possible presence of asbestos at Adirondack, Plaintiff filed a request for records under New York's Freedom of Information Law ("FOIL"). Am. Compl., ¶ 53. Plaintiff received records in response to that demand from officials at Adirondack and Defendant Perryman, the Deputy Superintendent of Administration, was present when some of those materials were provided to him on or about August 27, 2014. Dkt. No. 69-6, Perryman Decl. at ¶ 9; Am. Compl. at ¶ 54.

After returning to his housing unit from his meeting where at least some material responsive to his FOIL demand was provided, Plaintiff was advised that he was being

transferred to a different housing unit and to pack up his property. Am. Compl. at ¶ 58. He was then moved from housing unit 3W to unit 1E. *Id.* at ¶ 59. At 1E he was placed in a top bunk. *Id.* On September 5, 2014, Plaintiff was seen by medical staff regarding an injury to his back and ankle. Pl.'s Med. Records at p. 10. He was subsequently issued a bottom bunk pass by medical staff. *Id.* at p. 9; Am. Compl., Ex. F. On September 16, 2014, Plaintiff was moved from a top bunk in unit 1E to a bottom bunk. Woodruff Decl., Ex. B. He was moved to a different bottom bunk on September 19, 2014. *Id.* On September 8, 2014, Plaintiff's work assignment was changed from porter in housing unit 2W where he had at one time been housed, to the lawns and grounds crew. Woodruff Decl., Ex. C.

DOCCS has a policy in place regarding conducting random drug testing of inmates. *See* Woodruff Decl., Ex. D. That procedure generally requires a correctional staff person to request drug testing and to offer a specific basis for the need for the test. The test must subsequently be approved by an officer. *Id.* On four occasions in August 2014 Plaintiff was drug tested pursuant to this policy. Woodruff Decl. at ¶ 18. The four tests were requested by four different corrections officers. Woodruff Decl., Ex. E. Those testing requests were approved by three different supervisory officials. *Id.* None of the tests were requested or approved by either Defendant. *Id.* Plaintiff was transferred out of Adirondack Correctional Facility to another medium security facility, Franklin Correctional Facility, in October 2014. Woodruff Decl. at ¶ 19.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(a) & (c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury,

and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, "the court must 'resolve all ambiguities and draw all factual inferences in favor of'" the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998) (quoting *Adams v. Dep't of Justice of the City of N.Y.*, 143 F.3d 61, 65 (2d Cir. 1998) (alterations omitted). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read his [or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## III. DISCUSSION

As noted, Plaintiff's only remaining claim concerns alleged retaliation by Defendants Perryman and Woodruff. Dkt. No. 39. Plaintiff has identified six discrete allegedly retaliatory actions: (1) transfer from housing unit 3W to another, less desirable, housing unit (1E); (2) bed transfers within housing unit 1E; (3) denial of a ladder or chair near his bed; (4) a change to Plaintiff's inmate program assignment; (5) excessive urinalysis testing; and (6) transfer to a different correctional facility. *See generally Am. Comp.*

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action'." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir.2009)). The plaintiff must establish that "the protected conduct was a substantial or motivating factor" behind the retaliatory action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). The Second Circuit has warned that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) *(*citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)). This is true because given the nature of a retaliation claim they are "easily fabricated" and as a result "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d at 491.

The Court will presume only for purposes of this Motion that, at the very least, questions of fact exist as to Plaintiff's satisfaction of the first element of a retaliation claim. There is no dispute that Plaintiff filed a FOIL request that he claims serves as the basis for the alleged retaliation. Perryman Decl. at ¶ 9; Am. Compl. at ¶ 54. That filing was arguably a protected activity. *See McAvey v. Orange-Ulster BOCES*, 805 F. Supp. 2d 30, 39 (S.D.N.Y. 2011) (recognizing FOIL request as protected activity). The focus of the analysis, therefore, is on two questions: whether the complained of actions constituted adverse actions and whether Plaintiff has alleged sufficient personal involvement of the Defendants to establish the requisite casual connection between the protected activity and those actions.

**A. Adverse Action**

In the context of inmate retaliation claims, adverse action is viewed objectively and requires the Court to ask whether the action taken with respect to the inmate "would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003)). Courts have long recognized that if the alleged retaliation is not something that would deter an individual from exercising their rights, the alleged conduct is *de minimis* and "outside the ambit of constitutional protection." *McFadden v. Friedman*, 2015 WL 5603433, at *9 (N.D.N.Y. Sept. 23, 2015).

"Courts in the Second Circuit have held that an inmate's reassignment from a job and transfer from one housing unit to another . . . can constitute adverse action for purposes of a retaliation claim." *Klein v. Fischer*, 2015 WL 5174031, at *18 (N.D.N.Y. Sept. 2, 2015)

(citing cases). Similarly, prison officials may not transfer a inmate between prisons simply to retaliate against them. *Meriwether v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989). Plaintiff's factual allegations that his unit to unit, prison, and job assignment transfers resulted in worse conditions for him raise questions of fact as to whether those transfers were such that they would have chilled an individual of ordinary firmness from engaging in future protected activity. *See Gill v. Pidlypchak*, 389 F.3d at 381. The remaining claims, however, as noted below are not ones that constitute adverse actions and summary judgment is appropriate as to them.

Plaintiff complains of retaliation after being transferred to housing unit 1E in that he was moved around to different beds within the housing unit. Am. Compl. at ¶ 84. The record establishes that Plaintiff was initially placed in a top bunk in 1E. Woodruff Decl., Ex. B. He was then moved to a bottom bunk on September 16, 2014 and moved again to a different bottom bunk on September 19th. *Id.* The September 16th move to a bottom bunk was made after Plaintiff was seen by facility medical staff and given a bottom bunk pass as a result of an injury that made getting into a top bunk problematic. Pl.'s Med. Records at p. 9; Pl.'s Dep. at pp. 86-87. Viewed objectively, this is not an action taken *against* Plaintiff, but one taken to address medically established limitations. So viewed, this cannot be considered an adverse action.

Similarly, the allegation that Plaintiff was moved three days later to a different bottom bunk in the same housing unit does not constitute adverse action. The second move to a bottom bunk in the same housing unit, unaccompanied by any claim that this bed was

somehow less desirable than his prior bunk is no more than a *de minimis* action. *See, e.g., Gantt v. Lape*, 2012 WL 4033729, at *8 (N.D.N.Y. July 31, 2012) ("The filing of misbehavior reports that result in a temporary loss of various privileges such as permission to visit the commissary [does] not constitute adverse action because they are *de minimis*."); *Shaheen v. McIntyre*, 2007 WL 3274835, at *9, 2007 U.S. Dist. LEXIS 81895 (N.D.N.Y. Nov. 5, 2007) ("allegations of lost privileges, standing alone, would be too *de minimis* to constitute 'adverse action'").

As to the request for a chair or ladder to assist him getting into a top bunk, Plaintiff never made such a request directly to Defendants. *See* Pl.'s Dep. at pp. 83-87. Nor does the record contain any evidence of any official request for such an accommodation. In the absence of any such evidence dismissal is warranted. *Salaam v. Adams*, 2006 WL 2827687, at *8 (N.D.N.Y. Sept. 29, 2006) (directing dismissal when "there is no evidence in the record that [defendants] took adverse action against Plaintiff"). In any event, given that Plaintiff was moved to a bottom bunk after a short time, the denial of such an accommodation would at the most have been a *de minimis* denial insufficient to serve as the basis for a claim. *Gantt v. Lape*, 2012 WL 4033729, at *8.

Finally, the record fails to establish that the urinalysis testing was an adverse action. Plaintiff's FOIL request, which allegedly gave rise to the retaliation, was filed on August 19, 2014. Perryman Decl. at ¶ 8. Plaintiff was required to submit urine samples on four occasions in August and September 2014. Perryman Decl., Ex. A. at p. 12. Three of the tests about which Plaintiff complains were requested by corrections staff *prior* to the filing of the

FOIL request. *Id.* at pp. 13 (request made August 9, 2014), 14 (request made August 13, 2014), 15 (request made August16, 2014). Clearly none of these requests could have been in retaliation for Plaintiff's as of yet unfiled August 19th FOIL request.[1]

That leaves only one urinalysis request, made August 31, 2014, that came after the allegedly protected activity. Perryman Decl., Ex. A at p. 16. Defendants are also entitled to judgment as to this claim. "Urine tests are a fact of prison life." *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007) (citing *Green v. Berge*, 354 F.3d 675, 679 (7th Cir.2004)). As such a single urinalysis test is not the type of activity that "would chill a prisoner of ordinary firmness" from engaging in protected activity. *Id.* (citing *Dawes v. Walker*, 239 F.3d at 493); *see also Partak v. Behrle*, 2011 WL 7629500, at * 14 (N.D.N.Y. 2011) (Report Recommendation), *adopted*, March 27, 2012 ("The fact that defendant [] ordered three urine tests for plaintiff in three days does not rise to the level of an adverse action that would deter an inmate from asserting his rights.").

For these reasons, Plaintiff's retaliation claims regarding his bed transfers, the denial of a bed or chair, and urinalysis testing should be dismissed for failure to establish an adverse action.

### B. Casual Connection

As discussed above, a retaliation plaintiff must establish a causal connection between a protected activity and an adverse action. *Holland v. Goord*, 758 F.3d at 22. But to survive

---

[1] To the extent that Plaintiff contends he was retaliated against for filing a grievance, the only grievance in the record was filed September 8, 2014. Perryman Decl., Ex. A. All urinalysis test requests were made prior to this filing and could not, therefore, have been in retaliation for it.

dismissal Plaintiff "must advance non-conclusory allegations." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98, 106 (2d Cir. 2001). In a summary judgment motion, this requires the non-movant to proffer "some tangible proof" of a casual connection and Plaintiff "may not rely on conclusory assertions of retaliatory motive." *Washington v. Cty. of Rockland*, 373 F.3d 310, 321 (2d Cir. 2004). In the face of express denials on the part of Defendants of any role in the allegedly retaliatory events, the opposition to the Motion for Summary Judgment does not rise above such conclusory allegations and is insufficient to defeat the Motion.

As alleged by Plaintiff there is undeniably a close temporal proximity between his meeting with Defendant Perryman and his subsequent transfer to the 1E housing unit. Pl'.s Dep. at p. 45 (alleging that he was told of transfer "as soon as" he returned from getting FOIL records). Courts recognize, however, "that temporal proximity alone is insufficient to establish an inference of retaliation." *Thomas v. Waugh*, 2015 WL 5750945, at *4 (N.D.N.Y. Sept. 30, 2015); *see also Webster v. Fischer*, 694 F. Supp. 2d 163, 183 (N.D.N.Y.), *aff'd*, 398 F. App'x 683 (2d Cir. 2010). Beyond this proximity, there is no non-conclusory allegation made by Plaintiff to suggest that Perryman ordered the housing move. Perryman denies it. Perryman Decl. at ¶ 11. Other than his conclusory statements in opposing the Motion, the only arguable evidence Plaintiff has of retaliation is a statement alleged by an unnamed corrections officer that "I don't know who you pissed off over there, but they're moving

you." Pl.'s Dep. at p. 47.[2] This comment, however, does not state that it was Perryman who ordered the move. Plaintiff testified that the officer never expressly stated that Perryman had ordered the move. Pl.'s Dep. at p. 48. Plaintiff offers only his vague assumption that the comment implied this. *See id.* at pp. 48-49. Given Perryman's denials and the fact that there were admittedly at least two people at the meeting Plaintiff contends this comment must refer to, it is at best purely speculative that the comment relates to Perryman. Such a conclusory statement is insufficient here to withstand summary judgment. As a result, Perryman's Motion should be granted as to this claim.

Although alleging that Defendant Woodruff was also involved in his transfer from 3W to 1E, Plaintiff offers nothing beyond conclusory assertions and speculation to support a claim that Woodruff acted to retaliate against Plaintiff. There is no evidence that Woodruff was even present at the meeting regarding the FOIL request. *See* Perryman Decl. at ¶ 9 (identifying IRC and Perryman as only individuals present). Nor that Woodruff was aware of the FOIL request at all. The Second Circuit has long recognized that retaliation claims are subject to dismissal when they are made purely in "conclusory fashion and are not supported by evidence establishing the requisite nexus between any protected activity and the adverse action complained of." *Flaherty v. Coughlin*, 713 F. 2d 10, 13 (2d Cir. 1983). Absent allegations of this sort, there is nothing to connect Woodruff to the move to 1E housing unit

---

[2] This is one of several third party statements Plaintiff relies on in his opposition papers. Defendants oppose consideration of these statements as inadmissible hearsay. Dkt. No. 69-1, Defs.' Memo of Law, p. 8. Construing the record in the light most favorable to Plaintiff, the Court will presume, solely for purposes of the motion, that these statements would be admissible either for some non-hearsay purpose or pursuant to a hearsay exception.

and Woodruff is entitled to summary judgment.

Plaintiff next alleges that the September change in his program work assignment from porter, to the lawns and grounds crew, was retaliation on the part of Defendant Woodruff. Am. Compl. at ¶ 67.[3] Plaintiff, however, has failed to offer any evidence beyond pure speculation that either Defendant was involved in directing that change in assignment. Woodruff denies having any role in Plaintiff's programming. Woodruff Decl. at ¶ 12. Plaintiff's own papers assert that it was the facility Program Committee and Senior Counselor Ploof, who is not a party here, that made the change. Pl.'s Aff. at p. 3; Pl.'s Dep. at p. 88. In opposing the motion Plaintiff simply contends that Woodruff "directed" the change and that Perryman "was personally involved" in it. *Id.* at pp. 3 & 7. During his deposition Plaintiff testified that Ploof told him Woodruff wanted Plaintiff moved to lawns and gardens. Pl.'s Dep. at pp. 90 & 92. This statement, even if admissible[4], would only get Plaintiff over the personal involvement hurdle, raising a factual question about Woodruff's involvement. It does nothing to establish a casual connection between the assignment change and the protected activity. As noted above, Woodruff was not present for the meeting regarding the FOIL request and Plaintiff has offered no evidence suggesting that the FOIL request gave Woodruff any reason to act against Plaintiff. Without more, Plaintiff is left with nothing but a purely conclusory assertion that the FOIL request was the genesis of this move.

---

[3] The Amended Complaint only names Woodruff as a Defendant regarding this claim. Am. Compl. at ¶ 67. Perryman also denies any role in a program change. Perryman Decl. at ¶ 6. The analysis in this section would apply equally to any potential claim against Perryman.

[4] *See* Note 1, *supra*.

This type of easy to make assertion is exactly the reason courts need to view inmate retaliation claims with some skepticism. *See Dawes v. Walker*, 239 F.3d at 491.

Plaintiff also complains of being transferred from Adirondack to Franklin Correctional Facility in October 2014. Am. Compl. at ¶ 97. Defendants also deny any role in this transfer. Perryman Decl., at ¶ 18; Woodruff Decl. at ¶ 21. As to this claim as well, Plaintiff fails to provide anything other than purely conclusory allegations that Defendants were involved in this transfer. *See* Pl.'s Aff. at p. 7 (suggesting Defendants were involved in the transfer "by way of fabricating a false C.I.U. investigation, that relied on implausible facts."). While Plaintiff contends that Defendants have offered no documents to support their claim that the Office of Classification and Movement directed the transfer, *id.* at p. 4, Defendants have indeed offered such evidence. Woodruff, Ex. F. And while Plaintiff claims to have offered contradictory evidence, Pl.'s Aff. at p. 4, none is in fact offered beyond his own statements.

Although arguably not adverse actions, summary judgment would also be appropriate here on Plaintiff's intra-unit bed transfers, denial of a chair or ladder, and urinalysis testing claims because there is simply nothing in the record establishing that either Defendant was personally involved in any of these events. Both Defendants deny any involvement in the bed transfers, the denial of the chair, or the drug test requests. Perryman Decl. at ¶¶ 11, 14, & 17; Woodruff Decl. at ¶¶ 10, 11, & 13. Plaintiff offers no direct evidence connecting Perryman and Woodruff to any of these actions. Instead, as to each Plaintiff's opposition offers only conclusory counter-assertions that Defendants were involved. *See*, *e.g.*, Pl.'s Aff.

at pp. 2 ("Plaintiff opposes that Defendant Woodruff did not order and/or recommend that Plaintiff be denied a 'chair, ladder, or little locker'") and 3 (asserting Defendants "had authority and influence to direct correctional staff to submit meritless urinalysis testing against Plaintiff").

With regard to the urinalysis testing, the record evidence demonstrates no involvement by either Defendant. The record establishes that each test was ordered by a different member of Adirondack's correctional staff. Woodruff Decl., Ex. E. In addition, the four test requests were approved by three different supervisory officials. *Id.* During his deposition when asked to articulate the specific information on which he based his claim that Defendant Perryman[5] was involved in the urinalysis testing plaintiff stated "I'm thinking he has the ability and the capability to order someone to do it." Pl.'s Dep. at p. 66. He further stated "[m]aybe on a conspiracy note, you know to orchestrate, to someone else to do – you know, stay behind the scenes and not, you know, show face for his actions." *Id.* As discussed with the bed transfer and other actions, these conclusory arguments are insufficient to defeat summary judgment.

On this record, Plaintiff's generalized allegations are insufficient to raise a question of fact to defeat summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998) ("the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation"); *Diaz v. Fischer,* 2010 WL 1133074, at *2 (N.D.N.Y. Mar. 23, 2010) ("Where retaliation is alleged in "wholly conclusory terms" it may be dismissed on the pleadings");

---

[5] The Amended Complaint only names Perryman as a Defendant regarding this claim. Am. Compl. at ¶ 61. Woodruff also denies any role in the urinalysis testing. Woodruff Decl. at ¶ 13. The analysis in this section would apply equally to any potential claim against Woodruff.

*McCullough v. Burroughs*, 2008 WL 2620123, at *5 (E.D.N.Y. June 30, 2008) ("conclusory and unsubstantiated" retaliation claim cannot withstand summary judgment).

### C. Independent Justification for Actions

Finally, Plaintiff's claims regarding several of the allegedly retaliatory actions are subject to dismissal for an additional reason. Retaliation plaintiffs must show that the adverse action took place *because of* their exercise of some protected right. *Billups v. New York State*, 885 F. Supp. 38, 42 (N.D.N.Y. 1995). Courts have recognized that "if an action is taken 'on the basis of both valid and invalid motivations, [the action] is not constitutionally tainted by the invalid motive if the action in any event would have been taken on the constitutionally valid basis'." *Sher v. Coughlin*, 739 F.2d 77, 82 (2d Cir.1984) (citing *Mt. Healthy City School Dist. Brd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

Even if Plaintiff could establish the necessary causal connection here, summary judgment is appropriate as to the intra-housing unit bed transfers, urinalysis testing, and his transfer to Franklin Correctional Facility because the record establishes that "the challenged action clearly would have been taken on a valid basis alone" regardless of any alleged retaliation. *Davidson v. Chestnut*, 193 F.3d 144, 149 (2d Cir. 1999).

Plaintiff's transfer to a bottom bunk in 1E was based on a medically issued bottom bunk pass. Pl.'s Med. Records at p. 9. His move from a top bunk, therefore, clearly was dictated by medical staff. Regardless of any claim of illegitimate motive on the part of Defendants, the record also establishes that the urinalysis testing was ordered in compliance

with DOCCS procedures by staff members not named as parties to this action and as to whom no claim of retaliation has been made. *See* Woodruff Decl., Ex. E.

Moreover, the record establishes that DOCCS' Office of Classification and Movement had determined, following an investigation, that Plaintiff was engaged in conduct, organizing other inmates and extorting an inmate, that was deemed dangerous to the safety and security of the facility and that his transfer was warranted. Woodruff Decl. at ¶¶ 19-20 & Ex. F. Plaintiff offers only purely conclusory statements attempting to claim that the alleged transfer was not legitimate. See Pl.'s Mem. of Law at p. 9 (claiming that the Office of Classification and Movement "never performs and [sic] independent assessment" of transfers); Pl.'s Aff. at p. 4 (the basis relied on in the DOCCS documents was "fabricated"). Given the evidence that Classification and Movement directed the transfer based on an investigation, the record establishes that the transfer would have occurred in any event. *See Burke v. McCoy*, 1996 WL 743843, at *1 (N.D.N.Y. Dec. 20, 1996).

For the reasons set forth above, Defendants are entitled to judgment on the ground that Plaintiff cannot establish a retaliation claim.[6]

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motions for Summary Judgment (Dkt. No. 69) be **GRANTED** and this entire action be **DISMISSED**, and it is further

---

[6] Defendants also seek summary judgment based on qualified immunity. Given that Plaintiff had a clearly established right not to be retaliated against for the exercise of a protected activity and the allegations are that Defendants specifically acted out a retaliatory motive judgment on this ground would not be appropriate.

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[7] within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  February 16, 2018
         Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[7] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).